# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **EDDIE TOWNSEND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:13-cv-315-SLC** |
| | ) | |
| **M. WILSON, Fort Wayne Police Department** | ) | |
| **Officer, in his individual capacity, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

*Pro se* Plaintiff Eddie Townsend is suing Defendants Fort Wayne Police Officers

Matthew Wilson, Richard Page, Miguel Rivera, and Brian Juricak under 42 U.S.C. § 1983 and

Indiana law, claiming they arrested him without probable cause for operating a vehicle while

intoxicated and then maliciously prosecuted him.[1] Townsend also names as a Defendant the

Officers' employer, the City of Fort Wayne, under a *respondeat superior* theory.

Now before the Court is Defendants' fully-briefed motion for summary judgment,

asserting that all of Townsend's claims fail as a matter of law. (DE 36; DE 37; DE 39; DE 40;

DE 44). For the following reasons, Defendants' motion will be GRANTED.

## I. FACTUAL BACKGROUND

Many of the basic facts in this case are undisputed. Townsend does, however, contest a

few aspects of Defendants' version of events, even though he does not highlight any basis in the

record for the dispute. Indeed, the only item of evidentiary quality Townsend submits is the

transcript of a state court judicial review hearing (essentially the testimony of Officer Page) held

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate
Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 32).

to determine whether Townsend had refused to take a chemical breath test. Nevertheless, what Townsend truly disputes is apparent from his deposition testimony, offered in full by the Defendants, so that void is filled. Accordingly, the following recitation of the factual background is drafted in a light most favorable to Townsend, the non-moving party, specifically noting his version of events.[2]

On August 31, 2012, at approximately 8:05 p.m., Officer Wilson responded to a traffic accident at South Anthony Boulevard and Oxford Street. (DE 37-2 Dep. 6-8; DE 28 ¶¶ 5-6; DE 37-1 ¶ 3). At the scene of the accident, two witnesses, Joshua Skinner and Samuel Phenicie, advised Officer Wilson that Townsend had passed their respective vehicles at a high rate of speed, disregarded a traffic signal, and then collided with a vehicle driven by Benjamin Johnston.[3] (DE 37-2 Dep. 23-24; DE 28 ¶¶ 8-11; DE 37-1 ¶¶ 5, 6). Johnston stated to Officer Wilson: "[Y]ou might want to check on the other driver (Townsend), he might be intoxicated." (DE 28 ¶ 12; *see also* DE 37-1 ¶ 9).

Officer Wilson then focused on Townsend and claims that he noticed Townsend's eyes were red, there was a moderate odor of alcohol about him, and his speech was slurred. (DE 37-1 ¶ 12). Officer Wilson also thought that Townsend was uncooperative and difficult. (DE 37-1 ¶¶ 5, 8, 10-11, 14). For this reason, he asked dispatch to send another officer; soon Detective Rivera and Officer Juricak arrived at the scene. (DE 37-1 ¶¶ 16, 17, 21).

Townsend, however, denies that he had consumed alcohol prior to the accident or that he

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

[3] Although Townsend denies that he ran a red light, he does not dispute that the two witnesses told Officer Wilson he did. (DE 37-2 Dep. 23-24; DE 28 ¶¶ 9-11).

smelled like alcohol, was swaying or had difficulty walking, had slurred or mumbling speech, was angry or argumentative at the scene, or that his eyes showed any indicia of intoxication. (DE 37-2 Dep. 13-14, 24-27). In fact, Townsend claims that Officer Wilson fabricated everything about Townsend's condition when he filled out the eventual Affidavit for Probable Cause. (DE 37-2 Dep. 27; DE 37-1 Aff. Ex. 1). Nevertheless, Townsend concedes that he consented to a portable breath test ("PBT") at the scene, but only after Officer Wilson informed him that he would be taken to the Allen County Jail if he refused. (DE 37-2 Dep. 15; DE 28 ¶ 14; DE 37-1 ¶¶ 18-20; DE 37-3 ¶ 5). The PBT breath sample was a very poor one, but it still showed Townsend had a blood alcohol content of .12. (DE 37-2 Dep. 16; DE 28 ¶ 14; DE 37-1 ¶¶ 19-20; DE 37-1 Aff. Ex. 2; DE 37-3 ¶ 6).

Officer Wilson then had Detective Rivera and Officer Juricak assist him in placing Townsend in handcuffs and in the patrol car, which occurred without incident.[4] (DE 37-2 Dep. 17-18; DE 28 ¶ 15; DE 37-1 ¶ 21; DE 37-3 ¶ 7). When Townsend asked if he was under arrest, Officer Wilson advised him that he was being detained and transported to the Allen County Jail for a certified breath test. (DE 37-1 ¶ 23). Officer Wilson then transported Townsend to the Jail, and Officer Juricak followed in a separate vehicle.[5] (DE 37-2 Dep. 17-18; DE 28 ¶ 15; DE 37-1 ¶ 25; DE 37-4 ¶ 6). The trip was uneventful. (DE 37-2 Dep. 18).

Once at the Jail, Officer Page, in the presence of Officer Wilson, administered a field sobriety test to Townsend during the 20-minute wait to administer the chemical breath test. (DE

---

[4] After assisting Officer Wilson to handcuff and place Townsend in the patrol car, Detective Rivera had no further involvement in the matter. (DE 37-3 ¶¶ 7-8).

[5] After assisting Officer Wilson to handcuff and place Townsend in the patrol car, and then following Officer Wilson to the Jail, Officer Juricak had no further involvement in the matter. (DE 37-4 ¶ 7).

37-2 Dep. 18-19; DE 37-5 ¶¶ 6-9, 13; DE 37-1 ¶¶ 26-33).  Townsend failed the horizontal gaze nystagmus ("HGN") test, but passed the one-leg stand and the nine-step walk and turn tests, although he missed the heel-to-toe steps on steps 3 through 6.  (DE 37-5 ¶¶ 7-11; DE 37-1 ¶¶ 27-28).  Townsend complained throughout these tests and needed instructions repeated several times.  (DE 37-5 ¶¶ 9, 11; DE 37-1 ¶ 29).

While waiting to administer the chemical breath test, Officer Page repeatedly told Townsend to keep his hands away from his face to ensure that he put nothing in his mouth.  (DE 37-5 ¶¶ 12, 22).  When this admonishment had no effect, Officer Page handcuffed Townsend to keep him from doing so.  (DE 37-5 ¶ 12).

After the 20-minute wait, Officer Page, with Officer Wilson present, removed Townsend's handcuffs to administer a chemical breath test.  (DE 37-2 Dep. 19; DE 28 ¶ 16; DE 37-5 ¶¶ 13-27; DE 37-1 ¶ 31).  As the test machine was being prepared, Townsend asked whether he was going to have to wait another 20 minutes, to which Officer Page told him "no." (DE 37-5 ¶ 13).  Townsend then asked Officer Page whether the machine was faulty, but apparently he received no response.  (DE 37-5 ¶ 15).

Although Officer Page repeated the instructions on what Townsend was to do—specifically, to blow into the plastic tube—the results of Townsend's first attempt showed an "invalid" subject sample.  (DE 37-2 Dep. 19-20; DE 28 ¶ 17; DE 37-5 ¶¶ 18-19; DE 37-1 ¶ 32).  Officer Page told Townsend he was not blowing hard enough to get a valid reading.  (DE 37-2 Dep. 20; DE 37-5 ¶ 20; DE 37-1 ¶ 32).  Officer Page decided to give Townsend another opportunity and reset the machine.  (DE 37-2 Dep. 20-21; DE 28 ¶ 18; DE 37-5 ¶¶ 20-23).

Townsend complained that he had asthma and could not blow any harder,[6] that he did not like waiting, and that the procedure was "crazy." (DE 37-2 Dep. 20; DE 37-5 ¶¶ 21-23; DE 37-1 ¶ 33). After six minutes passed, Officer Page repeated the test but received an "incomplete" sample. (DE 37-2 Dep. 20-21; DE 28 ¶ 18; DE 37-5 ¶¶ 24-25). Even without the chemical breath test result, however, both Officers Wilson and Page concluded that Townsend was intoxicated based on their observations of him. (DE 37-1 ¶ 34; DE 37-5 ¶ 30).

Officer Wilson then completed an Affidavit for Probable Cause reporting that during the two hours he had observed Townsend, he noted that Townsend exhibited some classic signs of intoxication. (DE 37-1 ¶ 38; DE 37-1 Aff. Ex. 1). These included: (1) he needed support or assistance when walking and was swaying; (2) he had red eyes, but normal pupils; (3) he was mumbling and had slurred speech; (4) a moderate odor of alcohol on his breath; and (5) he was argumentative and angry. (DE 37-1 ¶ 38; DE 37-1 Aff. Ex. 1). Officer Wilson also documented that Townsend's clothing was orderly, his finger dexterity was apparently normal, and no alcohol or drugs were found. (DE 37-1 ¶ 38; DE 37-1 Aff. Ex. 1). Townsend disputes all of these observations, referring to them at his deposition as a "falsification" or "fabrication." (DE 37-2 Dep. 24-27).

A few days later, on September 4, 2012, a Judge of the Allen Superior Court, apparently after reviewing Officer Wilson's Affidavit of Probable Cause, found probable cause to believe that Townsend violated Indiana Code § 9-30-5-2(b), operating a vehicle while intoxicated ("OWI"). (DE 37-1 Aff. Ex. 1; DE 37-2 Dep. Ex. A; DE 37-6 at 1). Seven months later, on April 9, 2013, the Allen County Prosecutor dismissed the OWI charge and instead charged

---

[6] Officer Page, however, contends that he could feel the air on his hand which was holding the mouthpiece, indicating that Townsend was exhaling air out of his nose and blowing only half breaths. (DE 37-5 ¶ 27).

Townsend with reckless driving, Indiana Code § 9-21-8-52(a)(1). (DE 37-6 at 4; DE 37-7). But on July 16, 2013, the reckless driving charge was dismissed in conjunction with Townsend admitting that he violated Indiana Code §§ 9-21-3-7, disregarding a lighted signal, and 9-25-8-2(a)(1), operating a motor vehicle without financial responsibility. (DE 37-6 at 6). Neither Officer Wilson nor Page had any involvement with Townsend or his subsequent prosecution after his arrest and the initiation of the charges on September 4, 2012. (DE 37-1 ¶ 43; DE 37-5 ¶ 31).

On September 25, 2013, more than a year after his arrest and the finding of probable cause, Townsend filed a Notice of Claim under the Indiana Tort Claim Act ("ITCA"), Ind. Code § 34-13-3-1 *et seq*., asserting that he had been charged with OWI and disregarding a traffic signal based on an improper field sobriety test and an invalid chemical breath test. (DE 37-2 Dep. Ex. B). Townsend further asserted in his Notice that his OWI count was dismissed on April 9, 2013, and that he was subsequently charged with reckless driving, a charge that was later dismissed. (DE 37-2 Dep. Ex. B).

Also on September 25, 2013, Townsend filed a *pro se* complaint against Defendants in Allen Superior Court, which Defendants later removed to this Court. (DE 1; DE 2). Townsend has since amended his complaint twice (DE 18; DE 28), and those claims are now the subject of Defendants' motion for summary judgment (DE 36).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to

draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770 (citation omitted). A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### III. ANALYSIS

Recasting the ten counts Townsend offers in his Second Amended Complaint (DE 28) reveals what the Court understands to be his claims:

1) Officer Wilson lacked probable cause to detain Townsend at the scene, transport him to the Jail for a chemical breath test, and arrest him for OWI, all in violation of the Fourth Amendment and Indiana law;

2) Officer Page maliciously prosecuted Townsend when he failed to follow the state toxicology method when administering the chemical breath test, in violation of the Fourteenth Amendment and Indiana law;

3) Officer Wilson maliciously prosecuted Townsend by falsifying the Affidavit of

Probable Cause, in violation of the Fourteenth Amendment and Indiana law;

4) Officer Wilson and Officer Page conspired to maliciously prosecute Townsend for

OWI, in violation of the Fourth Amendment and 42 U.S.C. § 1985;[7]

5) Officer Wilson's actions or inactions constituted negligence under Indiana law;

6) Officer Page's actions or inactions constituted negligence under Indiana law; and

7) The City of Fort Wayne is liable under the doctrine of *respondeat superior* for the

Officer Defendants' violations of Indiana law.

The Court will address each of Townsend's claims in turn, beginning with his claims for

false imprisonment and false arrest.

**A.  A Reasonable Jury Could Only Conclude That Officer Wilson Had Reasonable Suspicion That Townsend Was OWI, and Thus, Officer Wilson's Detention of Townsend at the Scene of the Accident and His Request That Townsend Take a PBT Did Not Violate the Fourth Amendment or Indiana Law.**

Townsend first argues that Officer Wilson lacked probable cause to detain him at the

scene of the accident and administer a PBT.  But Officer Wilson needed only "reasonable

suspicion" that Townsend was driving while intoxicated, not probable cause, in order to detain

him and administer a PBT.

"A brief investigatory stop may be justified by reasonable suspicion that the person

detained is involved in criminal activity."  *Murphy v. Alford*, No. 1:11-cv-01660, 2013 WL

3043675, at *3 (S.D. Ind. June 17, 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 31 (1968)); *see*

*United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) ("Although an officer does not

need probable cause to conduct an investigatory stop, the brief detention must be based on

---

[7] Although Townsend did not advance any particular claims against Detective Rivera or Officer Juricak in his Second Amended Complaint, he does include these two Defendants when discussing the conspiracy claim in his response brief.  (*See* DE 28 ¶ 30; DE 39 at 3).

reasonable suspicion that the stopped individual has or is about to commit a crime." (quoting *United States v. Booker*, 579 F.3d 835, 838 (7th Cir. 2009))). "Reasonable suspicion is less than probable cause, but more than a hunch." *United States v. Grogg*, 534 F.3d 807, 810 (7th Cir. 2008). "The test, like the test for probable cause to arrest, is an objective one." *Vander Leest v. Steffens*, No. 09-c-125, 2010 WL 5439717, at *3 (E.D. Wis. Dec. 28, 2010) (citing *United States v. Rivera*, 906 F.2d 319, 321 (7th Cir. 1990)); *see United States v. Barnett*, 505 F.3d 637, 639 (7th Cir. 2007) (finding that the district court erred "in treating the test for reasonable suspicion as a subjective inquiry when it is an objective one").

In his deposition testimony, Townsend denied that he had consumed alcohol prior to the accident or that he smelled like alcohol, was swaying or had difficulty walking, had slurred or mumbling speech, was angry or argumentative at the scene, or that his eyes showed indicia of intoxication. (DE 37-2 Dep. 13-14, 24-27). Therefore, Defendants cannot rely on this evidence at summary judgment. *See Payne*, 337 F.3d at 770-73 (stating that the court must credit plaintiff's self-serving deposition testimony at summary judgment); *Bernardi v. Klein*, 682 F. Supp. 2d 894, 900 (W.D. Wis. 2010) (acknowledging that where plaintiff disputed he was driving at a reduced speed and crossed the center line, defendants could not rely on these facts at summary judgment).

Townsend does not dispute, however, that: (1) two eye witnesses told Officer Wilson that Townsend passed them at a high rate of speed, disregarded a traffic signal, and then collided with another car; and (2) the driver of the other car involved in the accident, Mr. Johnston, told Officer Wilson that he "might want to check on the other driver (Townsend), he might be intoxicated." (DE 28 ¶ 12; DE 37-1 ¶ 9). "[T]he credibility of a witness is a key factor in

establishing reasonable suspicion." *Vander Leest*, 2010 WL 5439717, at *5 (citation omitted).

Here, there were two witnesses to the events, not just one; neither were anonymous informants

or callers; and lying to a police officer would likely amount to obstructing an officer. *See id.*

Therefore, a reasonable police officer would have no reason to doubt these witnesses' credibility.

And the other driver told Officer Wilson that Townsend might be intoxicated. These reports

were sufficient to form reasonable suspicion on Officer Wilson's part that Townsend was OWI.

*See Navarette v. California*, 134 S. Ct. 1683, 1690 (2014) (concluding that a 911 caller's report

of being run off the road created reasonable suspicion of an ongoing crime such as drunk

driving); *State v. Renzulli*, 958 N.E.2d 1143, 1148 (Ind. 2011) (finding reasonable suspicion that

defendant was driving while impaired where a concerned citizen following him called 911 to

report a "drunk driver"); *Bogetti v. State*, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000) (finding

reasonable suspicion that defendant was driving while impaired where a man informed officers,

who were dining at a restaurant, that defendant had just exited the restaurant, drove away in a

white semi, and "may be intoxicated").

This reasonable suspicion is all Officer Wilson needed to ask Townsend to take a PBT at

the scene. A PBT "may not be administered randomly," but rather, "when the officer has a

reasonable suspicion based upon specific and articulable facts, and rational inferences from those

facts that the occupants are committing a crime or are about to commit a crime." *State v.

Whitney*, 889 N.E.2d 823, 829 (Ind. Ct. App. 2008). On this record, even when viewing the facts

in the light most favorable to Townsend and drawing all reasonable inferences in his favor, no

reasonable jury could conclude that Officer Wilson lacked a reasonable suspicion that Townsend

was OWI.

Accordingly, the Court will next consider whether Officer Wilson had probable cause to arrest Townsend for OWI.

### B. Officer Wilson Had Probable Cause to Detain and Arrest Townsend for OWI.

"Probable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers."[8] *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (citations omitted). "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012) (alteration in original) (citations and quotation marks omitted); *accord Wheeler*, 539 F.3d at 634 (citation omitted); *see United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000) ("[S]o long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." (citing *Whren v. United States*, 517 U.S. 806 (1996))).

"Probable cause, therefore, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Wheeler*, 539 F.3d at 634 (citation and internal quotation marks omitted). "In determining whether an officer had probable cause, the court steps into the shoes of a reasonable person in the position of the officer." *Id.* (citation omitted). Thus, the Court must evaluate probable cause "not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Id.*

---

[8] The elements of a § 1983 claim and an Indiana claim for false imprisonment or false arrest are essentially identical. *See Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009).

(citation and internal quotation marks omitted). "The probable cause determination must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Id.* (citation and internal quotation marks omitted).

Moreover, in a false arrest case, a defendant is entitled to qualified immunity where, even "if there was no probable cause, . . . a reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston Cty.*, 674 F.3d 874, 879-80 (7th Cir. 2012) (citation and internal quotation marks omitted). Thus, Officer Wilson is entitled to qualified immunity as long as he reasonably, although possibly mistakenly, believed that probable cause existed to arrest Townsend. *Id.* at 880. This standard is known as "arguable probable cause" and "is established when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Id.* (citation and internal quotation marks omitted).

Here, the result of Townsend's PBT, though based on a "very poor breath sample," revealed a blood alcohol content of .12. (DE 37-2 Dep. 16; DE 37-1 ¶ 20; DE 28 ¶14); *see Jones v. City of Elkhart*, No. 2:10-CV-402-TLS, 2012 WL 5947707, at *4 n.1 (N.D. Ind. Nov. 28, 2012) ("PBTs are akin to general field sobriety tests and provide officers with a simple method for making a threshold determination as to whether a person has consumed alcohol." (citation omitted)). This was in excess of the legal limit of .08, Ind. Code § 9-30-5-1(a), giving Officer Wilson probable cause to offer Townsend a chemical breath test, and ultimately, to arrest him for OWI. *See State v. Gilbert*, 997 N.E.2d 414, 418 (Ind. Ct. App. 2013) ("The probable cause necessary to offer a chemical breath test is the same probable cause that renders an arrest for

[OWI] reasonable under the Fourth Amendment."); *Hassfurther v. State*, 988 N.E.2d 811, 815

(Ind. Ct. App. 2013) ("A law enforcement officer has probable cause to offer a chemical test for

intoxication when the officer has knowledge of facts and circumstances that would lead a

reasonably prudent person to believe that the crime of operating a vehicle while intoxicated has

been committed.").

Townsend argues, however, that Officer Wilson lacked probable cause for his arrest

because a PBT is not admissible at trial. But "[p]robable cause can be established by evidence

which would not be admissible at trial." *State v. Johnson*, 503 N.E.2d 431, 433 (Ind. Ct. App.

1987) (finding that the alco-sensor test results showing blood alcohol content of .15 were

admissible for the purpose of establishing probable cause); *see Whitney*, 889 N.E.2d at 828.

Moreover, Officer Wilson also had the reports of the two witnesses and the other driver when

considering whether probable cause existed. *See Sow v. Fortville Police Dep't*, 636 F.3d 293,

302 (7th Cir. 2011) ("When an officer receives information from a third party whom it seems

reasonable to believe is telling the truth, the officer has probable cause to effectuate an arrest."

(citation omitted)); *accord Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986)

("When an officer has received his information from some person—normally the putative victim

or an eye witness—who it seems reasonable to believe is telling the truth, he has probable

cause." (citation and internal quotation marks omitted)). "Probable cause does not depend on the

witness turning out to have been right; it's what the police know, not whether they know the

truth, that matters." *Gramenos*, 797 F.2d at 439.

And once at the Jail, a chemical breath test did not negate Officer Wilson's finding of

probable cause that Townsend was OWI; rather, the chemical breath test yielded invalid or

incomplete results. (DE 40 at 45-46); *see Dalton v. State*, 773 N.E.2d 332, 334 (Ind. Ct. App. 2002) (concluding that the totality of the circumstances gave the officer probable cause to arrest defendant for OWI despite a PBT of .06). In that regard, Townsend argues that Officer Page's failure to wait 20 minutes between Townsend's first and second attempts to provide a valid sample for the chemical breath test violated state toxicology procedures. In support, he cites *Upchurch v. State*, 839 N.E.2d 1218 (Ind. Ct. App. 2005), claiming that it "is identical to [his] case." (DE 39 at 2). But the defendant in *Upchurch* challenged her OWI *conviction* based on the officer's failure to correctly administer the chemical breath tests, not whether the arresting officer had probable cause for her arrest. 839 N.E.2d at 1221. Thus, Townsend's argument is misplaced.

Accepting the premise that Officer Page took an unauthorized shortcut when administering Townsend's second chemical breath test, this still does not negate the fact that probable cause to arrest Townsend for OWI already existed based on the PBT and the witnesses' statements. *See generally Parker v. State*, 530 N.E.2d 128, 130 (Ind. Ct. App. 1988) ("[I]n Indiana, we have determined that the failure of an arresting officer to accord the individual arrested an opportunity to be chemically tested for alcohol in no way affects the validity of his arrest." (citation omitted)). Furthermore, while at the station, Townsend failed the HGN test, that is, one of the three field sobriety tests that Officer Page administered, further contributing to a finding of probable cause. *See Cooper v. State*, 761 N.E.2d 900, 903 (Ind. Ct. App. 2002) ("[T]he results of a properly administered HGN test are admissible to show impairment which may be caused by alcohol and, when accompanied by other evidence, will be sufficient to establish probable cause to believe a person may be intoxicated."); *State v. Huber*, 540 N.E.2d

140, 141 (Ind. Ct. App. 1989) (finding probable cause to arrest for OWI based on the results of the field sobriety tests and before administering any breathalyzer test).

Therefore, even when viewing the facts in the light most favorable to Townsend and affording him every reasonable inference, a reasonable jury could only conclude that a reasonable person in the position of the arresting officer would have believed that Townsend committed the crime of OWI based on the undisputed statements of the two witnesses and the other driver, the results of the PBT at .12, and his failure of the HGN field sobriety test. *See Wheeler*, 539 F.3d at 634. As a result, Defendants are entitled to summary judgment on Townsend's § 1983 and state law claims of false imprisonment and false arrest.[9]

## C. The Court's Finding of Probable Cause Also Dooms Townsend's Malicious Prosecution Claims.

Townsend also advances federal and state malicious prosecution claims against Officers Wilson and Page. In connection with these claims, Townsend more specifically asserts that Officer Wilson falsified the Affidavit of Probable Cause, and Officer Page failed to administer the chemical breath test in accordance with the state toxicology method.[10]

---

[9] It does not appear that Townsend is asserting the City is responsible under § 1983 for his federal claims, but even if he had, such an assertion would fail. Because *respondeat superior* is not a recognized theory under § 1983, *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 689 (1978), in order to prevail in an official capacity claim, a plaintiff must show that the alleged deprivation of a constitutional right is affirmatively linked to the governmental entity's policy or custom, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Here, Townsend has failed to point to any evidence suggesting the existence of an unconstitutional practice, policy, or custom or a failure to train its employees, let alone shown that such a practice or policy or failure to train caused him a constitutional deprivation. *See, e.g., Martin v. Fort Wayne Police Dep't*, No. 1:11-cv-351, 2014 WL 854504, at *5 (N.D. Ind. Mar. 5, 2014); *Armes v. Noble Cty. Sheriff Dep't*, 215 F. Supp. 2d 1008, 1019 (N.D. Ind. 2002).

[10] Townsend's malicious prosecution claim centers on the September 2013 OWI charge and does not appear to extend to the charge of reckless driving entered seven months later, in April 2014. The reckless driving charge was signed by the Deputy Prosecuting Attorney and sworn on the date that Townsend's OWI charge was dismissed; there is no evidence that the Officer Defendants had anything to do with Townsend's case beyond his initial arrest for OWI. Therefore, there is no evidence to support a malicious prosecution claim against the Defendants for the charge of reckless driving. *See, e.g., Cummings v. Quakenbush*, No. 1:12-cv-01538, 2014 WL 2511582, at *10 (S.D. Ind. June 3, 2014) (dismissing malicious prosecution claim where there was no evidence that

"To state a claim of malicious prosecution under § 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Starks v. Moore*, 51 F. Supp. 3d 782, 794-95 (S.D. Ind. 2014) (quoting *Washington v. Summerville*, 127 F.3d 552, 558-59 (7th Cir. 1997)). "In Indiana, the elements of a malicious prosecution claim are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id*. (quoting *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005)).

As concluded earlier, no reasonable jury could conclude that Officer Wilson lacked probable cause to arrest Townsend for OWI.[11] *See Lackey v. Town of Griffith*, No. 2:10 CV 64, 2012 WL 5398311, at *9 (N.D. Ind. Nov. 5, 2012); *see also Howlett v. Hack*, - - F.3d - -, 2015 WL 4433218, at *4 (7th Cir. July 21, 2015) ("[Plaintiff] cannot rely on his allegedly unlawful seizure, not only because the arrest was proper (because it was supported by probable cause) but also because a warrantless arrest 'cannot serve as the basis for a malicious prosecution claim.'" (quoting *Serino*, 735 F.3d at 593-94)). Therefore, Townsend cannot establish an essential

---

police officer had anything to do with the charging decisions or the decision to dismiss the charges by the prosecutor's office).

[11] Moreover, although Townsend claims that Officer Wilson "falsified" or "fabricated" the Affidavit of Probable Cause (DE 37-2 Dep. 25-27), he does not suggest, much less produce any evidence, that Officer Page falsified the results of the chemical breath test. Rather, he asserts that Officer Page failed to administer the second test in accordance with the state toxicology method by proceeding with the second test within less than 20 minutes of the first test. (DE 37-2 Dep. 30-31). But the Court fails to see how this action could satisfy the malice element of Townsend's malicious prosecution claim. *See Serino v. Hensley*, 735 F.3d 588, 594 (7th Cir. 2013) (describing malice as where the officer's "recommendations were *knowingly* false, that he withheld exculpatory evidence from the prosecutor, or that he took steps to wrongfully further what he knew was a baseless prosecution" (emphasis in original)); *Mudd v. Lyon*, No. 1:12 CV 164, 2014 WL 218443, at *10 (N.D. Ind. Jan. 17, 2014) (collecting cases). Thus, in addition to the probable cause element, Townsend also fails to establish the second element of a state law malicious prosecution claim with respect to Officer Page.

element of his malicious prosecution claims, entitling Defendants to summary judgment on these claims.[12]  *Id*.

**D.  Townsend's Claims of Conspiracy Against the Officer Defendants Under 42 U.S.C. § 1985 Are Baseless.**

Townsend also claims Officers Wilson and Page conspired with each other to violate his civil rights under 42 U.S.C. § 1985.  Townsend includes Detective Rivera and Officer Juricak when discussing the conspiracy claim in his response brief, but does not advance this claim (or for that matter, any other claim) against them in his second amended complaint.[13]

"[C]onspiracy is not an independent basis of liability in § 1983 actions."  *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008).  "A party may recover damages under 42 U.S.C. § 1985(3) if two or more persons conspire for the purpose of depriving the plaintiff of the equal protection of the laws."  *Jones*, 2012 WL 5947707, at *15 (citing *Xiong v. Wagner*, 700 F.3d 282, 297 (7th Cir. 2012)).  "To recover under § 1985(3), a party must establish: '(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens.'"  *Id*. (quoting *Xiong*, 700 F.3d at 297).  "To establish the purpose of the conspiracy under prong two, a plaintiff must demonstrate racial, ethnic, or other class-based invidiously discriminatory animus behind the conspirators'

---

[12] Furthermore, as explained *infra* in subpart E, the Defendants are immune under the ITCA from Townsend's state law claim of malicious prosecution.

[13] The undisputed record reflects that Detective Rivera's only involvement was to assist in handcuffing Townsend at the scene and placing him in Officer Wilson's car.  (DE 37-3 ¶ 7).  Officer Juricak also helped with the handcuffing and then followed Officer Wilson's car to the Jail, but had no further involvement.  (DE 37-4 ¶ 6).  Townsend does not claim any problem with the handcuffing and merely says that Detective Rivera and Officer Juricak were involved in his detention at the scene.  (DE 37-2 Dep. 18, 30).

actions." *Id.* (internal quotation marks omitted) (quoting *Xiong*, 700 F.3d at 297).

Townsend has not alleged, much less provided any evidence, that a racial, ethnic, or other class-based discriminatory animus was behind the Officer Defendants' actions. In his response brief, Townsend simply argues that the Officer Defendants "conspir[ed] together to procure a conviction for OWI and disregarding a traffic signal and any lesser charges" and "would have been witness to this matter had it proceeded to a trial as opposed to being dismissed." (DE 39 at 3-4). In § 1985 cases, vague and conclusory allegations of a conspiracy—such as Townsend makes here—fail to state a claim upon which relief can be granted. *Neal v. Crawford*, No. 3:07 CV 289, 2007 WL 2713247, at *2 (N.D. Ind. Sept. 14, 2007) (citing, *inter alia*, *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000)). Consequently, the Officer Defendants are entitled to summary judgment on Townsend's § 1985 conspiracy claim.

**E. The Officer Defendants Are Immune Under the ITCA from Townsend's State Law Claims of Negligence and Malicious Prosecution.**

The Officer Defendants enjoy immunity under the ITCA from Townsend's state law claims of negligence and malicious prosecution.

Under the ITCA, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."[14] Ind.

---

[14] The ITCA, under Indiana Code § 34-13-3-3(8), however, does not provide immunity for acts of enforcement constituting false imprisonment or false arrest. *See, e.g., Serino*, 735 F.3d at 593 (noting that the state law tort of false arrest is not barred by ITCA immunity); *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1032 (N.D. Ind. 2014); *Chapman v. Indiana*, No. 3:13-cv-730, 2014 WL 1831161, at *4 (N.D. Ind. May 8, 2014); *Hendricks v. New Albany Police Dep't*, 749 F. Supp. 2d 863, 872 (S.D. Ind. 2010) ("Indiana courts have differentiated malicious prosecution, which is subject to immunity, from false arrest and false imprisonment, which are not." (citing *Livingston v. Consol. City of Indianapolis*, 398 N.E.2d 1302 (Ind. Ct. App. 1979))); *but see Mayes v. City of Hammond, Ind.*, 442 F. Supp. 2d 587, 629 (N.D. Ind. 2006) (reasoning that § 34-13-3-3 does not trump § 34-13-3-5(b), and thus, that officer was immune from false imprisonment claim (citing *Bushong v. Williamson*, 790 N.E.2d 467, 472 (N.D. Ind. 2003))). But as already concluded *supra*, Townsend's state law claims of false imprisonment and false arrest fail on the merits, and as explained *infra*, are also procedurally barred for failing to file a timely notice of tort claim under the ITCA.

Code § 34-13-3-5(b). To bring state tort claims against the employee personally, a plaintiff must allege, and ultimately prove, that the employee's act or omission is either "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." *Sutter v. Carroll*, No. 1:11-CV-83, 2012 WL 2343372, at *12 (N.D. Ind. June 20, 2012) (citing Ind. Code § 34-13-3-5(c); *Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1115 (Ind. Ct. App. 2001)).

In his Second Amended Complaint, Townsend alleges that the Officer Defendants were "all employees of the City of Fort Wayne," were "acting in their official and individual capacities," and "were also acting under the color of state law." (DE 28 ¶¶ 23-24). He further asserts that the City was "legally responsible under Indiana State Law, specifically under the doctrine of responde[a]t super[ior], for the actions of the individual defendant[s] as regards to Townsend['s] state law claims." (DE 28 ¶ 25). The Court notes, however, that Townsend tacked on another phrase that is inconsistent with the rest of his pleading: "That *all defendants w[ere] acting completely outside the scope of their employment* and pursuant to the policies and procedures of the City of Fort Wayne." (DE 28 ¶ 25 (emphasis added)).

Thus, Townsend in his Second Amended Complaint apparently was attempting to not only advance his state law claims against the City, but also resurrect them against the Officer Defendants. (*See* DE 17 at 4 (striking Townsend's proposed state law tort claims against the Officer Defendants in his proposed first amended complaint)); *Greer v. Bd. of Educ. of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) ("[W]e liberally construe the pleadings of individuals who

proceed *pro se*."). While Townsend arguably can plead inconsistent claims,[15] he "cannot, at the

end of the day, recover on inconsistent claims." *Miller v. City of Plymouth*, No. 2:09-CV-205

JVB, 2010 WL 1474205, at *8 (N.D. Ind. Apr. 9, 2010). Indeed, summary judgment is "the put up

or shut up moment in a lawsuit, when a party must show what evidence it has that would convince

a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir.

2007) (citation omitted).

Townsend has provided no argument, much less evidence, that the Officer Defendants were

acting outside the scope of their employment.[16] Rather, he asserts in his response brief that "[t]he

City of Fort Wayne is [l]iable for the [p]olice [o]fficers [i]t employs, under the doctrine of

respondeat superior." (DE 39 at 5).

Ultimately, all of Townsend's claims center on his assertion that Officers Wilson and Page

arrested and attempted to procure his conviction "based upon incomplete or unsupported

information [they] knew or should have known, was false, distorted or fabricated." (DE 39 at 3-4;

*see* DE 37-2 Dep. 25-27 (asserting this only with respect to Officer Wilson)). But even where a

police officer in the scope of his employment "knowingly provide[s] false and malicious

information," the ITCA provides him with immunity. *Butt v. McEvoy*, 669 N.E.2d 1015, 1018

---

[15] A number of courts, however, "have noted that such dual pleading is improper" in the context of the ITCA. *Hansen v. Bd. of Trs. for Hamilton Se. Sch. Corp.*, No. 1:05-cv-670-LJM-WTL, 2007 WL 3091580, at *6 (S.D. Ind. Oct. 19, 2007) (collecting cases).

[16] Under Indiana law, "'[c]onduct . . . of the same general nature as that authorized, or incidental to the conduct authorized,' is within the scope of employment." *Reinbold v. Harris*, No. IP 00-0587, 2002 WL 449725, at *7 n.4 (S.D. Ind. Jan. 30, 2002) (second alteration in original) (quoting *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000)). "An act is incidental to authorized conduct when it 'is subordinate to or pertinent to an act which the servant is employed to perform,' or when it is done 'to an appreciable extent to further his employer's business.'" *Id.* (quoting *Celebration Fireworks*, 727 N.E.2d at 453). "Even the commission of an intentional criminal act may be considered as being within the scope of employment if 'the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope.'" *Id.* (quoting *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993)).

(Ind. Ct. App. 1996) (finding police officer immune under the ITCA on claim of malicious prosecution where he was acting in the scope of his authority as a police officer when he allegedly knowingly provided false and malicious information); *see also Serino*, 735 F.3d at 595 (stating that the ITCA shields government employees and entities from state malicious prosecution claims); *Katz-Crank v. Haskett*, No. 1:13-cv-00159-TWP-DM, 2014 WL 1324283, at *7 (S.D. Ind. Mar. 31, 2014) (same); *Mudd*, 2014 WL 218443, at *9 (same).  Therefore, on this record, a reasonable jury could only conclude that the Officer Defendants' actions were "to an appreciable extent, to further [their] employer's business," and thus, that they were acting within the scope of their employment.  *Bushong*, 790 N.E.2d at 473; *accord Bradley v. Tibbles*, No. 3:08-CV-366-JVB, 2009 WL 3242101, at *4-5 (N.D. Ind. Sept. 30, 2009); *Celebration Fireworks*, 727 N.E.2d at 453.  As a result, the Officer Defendants are immune under the ITCA, specifically, Indiana Code § 34-13-3-5(b), from Townsend's state law claims of negligence and malicious prosecution.

Moreover, another provision of the ITCA, Indiana Code § 34-13-3-3(6), provides: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he initiation of a judicial or administrative proceeding." Therefore, this provision cloaks not only the Officer Defendants, but also the City, with immunity from Townsend's state law malicious prosecution claims, *see Serino*, 735 F.3d at 595; *Fitzpatrick v. City of Hobart*, No. 2:03-CV-359 PS, 2007 WL 1560281, at *15 (N.D. Ind. May 25, 2007), providing an additional basis for summary judgment in favor of Defendants.

### F.  All of Townsend's State Law Claims Against the City and the Officer Defendants, with the Exception of Malicious Prosecution, Are Barred by His Failure to File a Timely Notice of Tort Claim.

Because the Officer Defendants' conduct giving rise to Townsend's claims was within the scope of their employment, Townsend was required to comply with the notice requirements of the

ITCA in prosecuting his state law claims against the City and the Officer Defendants. Townsend, however, failed to timely comply with these notice requirements with respect to his state law claims of false imprisonment, false arrest, and negligence, providing yet another basis for granting summary judgment in Defendants' favor on these claims.

The ITCA "bars claims against political subdivisions unless the plaintiff notifies the governing body of the political subdivision along with the Indiana political subdivision risk management commission within 180 days after the loss occurred." *Washington v. Schumann*, No. 2:09-CV-270-PRC, 2013 WL 5314610, at *5 (N.D. Ind. Sept. 19, 2013) (citation omitted); *see* Ind. Code § 34-13-3-8(a). "Where a plaintiff elects to sue a governmental employee in his or her individual capacity, notice is required only if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment." *Chang v. Purdue Univ.*, 985 N.E.2d 35, 51 (Ind. Ct. App. 2013) (internal citation and quotation marks omitted).

"Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove and which the trial court must determine before trial." *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (quoting *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999)). "Once a defendant raises failure to comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance." *Id.* (citing *Davidson*, 716 N.E.2d at 34).

As concluded earlier, it is clear that the Officer Defendants' conduct giving rise to Townsend's claims was within the scope of their employment. Therefore, Townsend was required to comply with the notice requirements of the ITCA not only in prosecuting his state law claims against the City, but also with respect to his state law claims against the Officer Defendants.

The actions of the Officer Defendants alleging to have constituted false imprisonment,

false arrest, and negligence occurred on or about August 31, 2012, the date of Townsend's arrest, and no later than September 4, 2012, the date Officer Wilson completed the information and summonses concerning the charges of OWI and disregarding a traffic signal. (DE 37-1 ¶ 42). Townsend, however, did not file his Notice of Claim under the ITCA until September 25, 2013, that is, more than one year after the events giving rise to these claims. (DE 37-2 Dep. 34-35, Ex. B). Therefore, there is no dispute that his Notice of Claim is untimely.

Nor does Townsend suggest, much less provide evidence, that he attempted to contact the appropriate entity or apprise it of his claim. Thus, he does not prove even substantial compliance with the notice requirement. *See Lopez v. Pastrick*, No. 2:05-CV-452 PPS-APR, 2011 WL 2357829, at *2 (N.D. Ind. June 8, 2011) ("The plaintiff bears the burden of proving substantial compliance."); *Guines v. Muncie Cmty. Sch. Corp.*, No. 1:10-cv-299-WTL-DML, 2010 WL 5418890, at *3 (S.D. Ind. Dec. 20, 2010) (dismissing plaintiffs' state law claims where they failed to provide any evidence of even substantial compliance with the ITCA).

Consequently, because Townsend failed to timely comply with the notice requirements of the ITCA, his state law claims of false imprisonment, false arrest, and negligence are procedurally barred, providing further grounds for granting summary judgment in Defendants' favor on these claims.[17] *See, e.g.*, *Chang*, 985 N.E.2d at 50-54 (barring plaintiff's state law claims against governmental employees for failure to provide notice of claim under the ITCA); *Sowell v.*

---

[17] Townsend's Notice of Claim, however, is timely with respect to his malicious prosecution claim. (DE 37 at 16-17). The OWI claim was dismissed on April 9, 2013, and Townsend filed his Notice of Claim within 180 days thereafter, on September 25, 2013. *See Marten v. Office of the Ind. Att'y Gen.*, No. 1:12-cv-195-TWP-TAB, 2012 WL 5207617, at *6 (S.D. Ind. Oct. 22, 2012) (noting that plaintiff's state law malicious prosecution claim did not accrue until the charges in the underlying criminal case were terminated in his favor). But as concluded earlier, not only do Townsend's state law malicious prosecution claims fail on the merits, but Defendants enjoy immunity from these claims under the ITCA.

*Dominguez*, No. 2:09 CV 47, 2011 WL 294758, at *11-14 (N.D. Ind. Jan. 26, 2011); *Radjen v. Parrish*, No. 2:08-CV-160-PRC, 2009 WL 3060206, at *13 (N.D. Ind. Sept. 21, 2009); *Jackson v. Ramsey*, No. 1:08-CV-49, 2009 WL 3010482, at *4-5 (N.D. Ind. Sept. 16, 2009) (barring plaintiff's state law false arrest claim against the City of Fort Wayne for failure to comply with the notice provisions of the ITCA); *Dameron v. City of Scottsburg*, 36 F. Supp. 2d 821, 838 (S.D. Ind. 1998); *Estate of Conner by Conner v. Ambrose*, 990 F. Supp. 606, 617 (N.D. Ind. 1997) (finding that all of plaintiff's state law claims against any defendants in their official capacity were precluded by the ITCA).

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment (DE 36) and DIRECTS the Clerk to enter judgment in favor of Defendants and against Plaintiff.

SO ORDERED.  Enter for this 10th day of August 2015.

s/ Susan Collins_____
Susan Collins,
United States Magistrate Judge